# UNITED STATES DISTRICT COURT
## FOR THE
## MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| vs. | ) | PRESENTENCE INVESTIGATION REPORT |
| | ) | |
| HARVEY LEE BURNETTE, JR. | ) | Docket No. 1:09CR193-1 |

---

**Prepared For:**   The Honorable William L. Osteen Jr.
United States District Judge

**Prepared By:**   Katerina M. Holland
Senior U.S. Probation Officer
Winston-Salem, NC 27101
(336) 631-5111, ext 20
October 30, 2009

**Assistant United States Attorney**
Randall S. Galyon
251 N. Main Street, Suite 726
Winston-Salem, NC 27101
(336) 631-5268

**Assistant Federal Public Defender**
William S. Trivette
101 S. Elm Street, Suite 210
Greensboro, NC 27401
(336) 333-5455

**Sentence Date:**   January 21, 2010

**Offense(s):**   Conspiracy to Distribute Cocaine Hydrochloride,
21 U.S.C. §§ 846 and 841(b)(1)(A), not less than 20 years, and not more than
life imprisonment/$8,000,000 fine, or both, a Class A Felony (enhanced
penalties)

**Release Status:**   Arrested on May 13, 2009, for the instant federal offense and released on an
unsecured bond on May 20, 2009. Remanded into custody following the jury
verdict on July 30, 2009.

**Detainers:**   None.

**Codefendants:**   None.

**Related Cases:**   None.

**Date Report Disclosed:** December 1, 2009                **Date Report Revised:**

## Identifying Data:

| | |
|---|---|
| **Date of Birth:** | December 12, 1964 |
| **Age:** | 44 |
| **Race:** | Black, Non-Hispanic |
| **Sex:** | Male |
| | |
| **SSN:** | 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 |
| **FBI No:** | 235089JA5 |
| **USM No:** | 24586-057 |
| **Other ID No:** | SID/NC0413707A |
| | NCDL # 4255337 (CDL A- Active) |
| | |
| **Education:** | High School Diploma (verified) |
| **Dependents:** | One |
| **Citizenship:** | United States |
| | |
| **Legal Address:** | 1911 Lees Chapel Road (girl-friend Jeanie Haman) |
| | Greensboro, NC 27405 |
| | |
| **Aliases:** | Junior Burnette |
| | Lee Burnette |

**Photograph:**



Restrictions on Use and Disclosure of Presentence Investigation Report. Disclosure of this presentence investigation report to the Federal Bureau of Prisons and redisclosure by the Bureau of Prisons is authorized by the United States District Court solely to assist administering the offender's prison sentence (i.e., classification, designation, programming, sentence calculation, pre-release planning, escape apprehension, prison disturbance response, sentence commutation, or pardon) and other limited purposes, including deportation proceedings and federal investigations directly related to terrorist activities. If the presentence investigation report is redisclosed by the Federal Bureau of Prisons upon completion of its sentence administration function, the report must be returned to the Federal Bureau of Prisons or destroyed. It is the policy of the federal judiciary and the Department of Justice that further redisclosure of the presentence investigation report is prohibited without the consent of the sentencing judge.

## PART A.      THE OFFENSE

Charge(s) and Conviction(s)

1.      On May 26, 2009, a federal grand jury for the Middle District of North Carolina returned a single-count Bill of Indictment against the defendant, Harvey Lee Burnette, Jr., charging that from in or about 2007, continuing up to and including February, 2009, in Guilford County, in the Middle District of North Carolina, and elsewhere, Harvey Lee Burnette, Jr., and divers other persons, conspired to distribute 5 kilograms or more of cocaine hydrochloride, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A).

2.      The government filed an Information of Prior Conviction on July 1, 2009, pursuant to 21 U.S.C. §§ 850 and 851(a)(1), informing the Court that the defendant was previously convicted of the felony drug offense of Possession With Intent to Sell and Deliver Cocaine on July 25, 2002, in Guilford County Superior Court, High Point, NC. The government requested the defendant be subject to the increased penalties provided for in 21 U.S.C. § 841(b)(1)(A).

3.      On July 30, 2009, in the United States District Court for the Middle District of North Carolina, a jury found Harvey Lee Burnette, Jr., guilty as charged in the single-count indictment.

Pretrial Adjustment

4.      At a detention hearing on May 20, 2009, the defendant was released on an unsecured bond and placed under the supervision of Pretrial Services. The defendant was ordered by the Court to comply with several pretrial release conditions, including location monitoring, substance abuse testing, and employment restrictions. The defendant complied with the conditions of his pretrial release and satisfactorily adjusted to pretrial supervision. He was remanded into custody following the jury verdict on July 30, 2009.

The Offense Conduct

5.      Sometime in February 2009, in furtherance of an ongoing investigation of a major drug trafficking organization operating out of Mexico through Texas and Atlanta, Georgia, and into the Greensboro, NC, area, special agents with the Department of Justice Drug Enforcement Administration (DEA), arrested an individual linked to the drug trafficking organization. This person, referred to as cooperating defendant #2 (CD2), was a drug courier for the organization and entered the United States from Mexico in September 2007, to work under the authority of another individual referred to as cooperating defendant #1 (CD1). CD2 was recruited to transport cocaine to distributors in various states, including North Carolina. DEA agents interviewed CD2 who was incarcerated at a county jail in Texas, and

CD2 admitted to delivering major quantities of cocaine hydrochloride at the direction of CD1. CD2 admitted to delivering cocaine hydrochloride to several individuals, including Harvey Lee Burnette, Jr. (Defendant Burnette). During the interview, CD2 recalled delivering 39 kilograms of cocaine hydrochloride to Defendant Burnette at 3804 Hardwick Drive, Greensboro, NC, on at least one occasion, sometime in or after September 2007.

6.    DEA agents subsequently met with CD1 who was being detained at the Durham County, NC, Detention Center. CD1 admitted to being a supplier and distributer of multi-kilogram quantities of cocaine hydrochloride. CD1 provided details of several persons connected to the drug trafficking organization who received large shipments of cocaine hydrochloride, including Carlos Cooke, Alvis Fewell, and Jermaine Goins. The deliveries were managed by CD1, and included deliveries between 50 and 80 kilograms of cocaine primarily to a black male known as "J Rock," who was later identified as Jermaine Goins. CD1 eventually stopped supplying cocaine to Jermaine Goins after he attempted to steal from CD1. However, it was Jermaine Goins who eventually introduced CD1 to Defendant Burnette.

7.    CD1 identified Defendant Burnette as a customer who purchased and distributed multi-kilogram quantities of cocaine in the Guilford County, NC, area. CD1 estimated that Defendant Burnette had purchased between **9 and 39 kilograms** of cocaine at any given time over the past two years. According to the CD1, kilogram quantities of cocaine hydrochloride were delivered to Defendant Burnette's residence at 3804 Hardwick Drive in Greensboro, NC, at Defendant Burnette's request. Following the debriefing of CD1 and CD2, law enforcement targeted Defendant Burnette as a major distributor of cocaine hydrochloride.

8.    On May 11, 2009, DEA special agents with the Greensboro, NC, resident office, met with CD1. At the direction of the agents, CD1 placed a consensually recorded call to Defendant Burnette. During the conversation, CD1 and Defendant Burnette discussed the details of a plan for CD1 to deliver to Defendant Burnette **9 kilograms** of cocaine hydrochloride at a price of $32,000 per kilogram. The plan called for CD1 to deliver the cocaine on May 13, 2009, to Defendant Burnette who confirmed that he would be prepared to accept and pay for the delivery.

9.    On May 13, 2009, CD1 contacted Defendant Burnette and advised that he/she was in town with 9 kilograms of cocaine. Defendant Burnette agreed to meet at Smokey Bones Restaurant located on High Point Road in Greensboro, NC. A short time later, CD1 telephoned Defendant Burnette and confirmed that a Hispanic male (an undercover officer) was in the parking lot waiting for Defendant Burnette. Once Defendant Burnette arrived in the parking lot, Defendant Burnette met with the undercover officer and advised him to follow Defendant Burnette to the parking lot of Blockbusters located on Farmington Drive in Greensboro, NC. After Defendant Burnette reconnected with the undercover officer who was posing as a representative of CD1, in the Blockbusters parking lot, Defendant Burnette requested to see the cocaine prior to payment. The undercover officer told Defendant

Burnette that the officer would need to see the money before he would show the cocaine. At that point, Defendant Burnette returned to his vehicle and left the area. Defendant Burnette was followed by an arrest team from the meeting location and arrested minutes later on High Point Road in Greensboro.

10.    Following his arrest, Defendant Burnette was Mirandized and agreed to speak with the agents and agreed to a search of his residence. During the interview of Defendant Burnette, he admitted receiving cocaine shipments from CD1 in the past. He also admitted receiving at least one shipment of at least 9 kilograms of cocaine (*Note: This amount is not used to avoid possible double-counting.*). Defendant Burnette stated he started receiving cocaine from CD1 around late 2007 or early 2008. Defendant Burnette admitted that usually the transactions occurred at Defendant Burnette's residence. On one occasion, Defendant Burnette recalled a "courier" who worked for CD1, deliver a shipment of cocaine to Defendant Burnette at his residence and at the direction of CD1.

11.    On May 13, 2009, the residence of Defendant Burnette located at 3804 Hardwick Drive, Greensboro, NC, was searched. The residence was shared by Defendant Burnette and his live-in girlfriend, Jeanie Haman, and her two minor children. After the residence was secured, members of the Guilford County Sheriff's office, narcotics unit, conducted a search of the residence and found in the closet of the master bedroom, three bags containing cocaine hydrochloride in quantities of **.5 grams**, **2.5 grams**, and **4.5 grams**. The bags were stuffed inside a pair of men's dress shoes on top of the closet shelf. The search team also found in the closet a digital scale inside a shoe box located on the same top shelf.

12.    Based on aforementioned information, Defendant Burnette is accountable for least **18.007 kilograms of cocaine hydrochloride** in determining a base offense level. This amount falls within the range of at least 15 kilograms but less than 50 kilograms of cocaine hydrochloride.

Victim Impact

13.    There are no identifiable victims of the offense.

Offense Level Computations

14.    The 2008 edition of the United States Sentencing Commission Guidelines Manual has been used for guideline computations.

Conspiracy to Distribute Cocaine Hydrochloride

15.    **Base Offense Level:** The guideline for a violation of 21 U.S.C. § 846 is found in ___34___ USSG §2D1.1. The base offense level for an offense involving at least 15 kilograms but less than 50 kilograms of cocaine hydrochloride is 34. USSG §2D1.1(c)(3).

16.     **Specific Offense Characteristic:** None.                            <u>0</u>

17.     **Victim-Related Adjustment:** None.                                  <u>0</u>

18.     **Adjustments for Role in the Offense:** None.                     <u>0</u>

19.     **Adjustment for Obstruction:** None.                               <u>0</u>

20.     **Adjusted Offense Level (Subtotal):**                             <u>34</u>

21.     **Chapter Four Enhancement:** None.                              <u>0</u>

22.     **Adjustment for Acceptance of Responsibility:** Although the defendant provided    <u>0</u>
    a statement to authorities at the time of his arrest regarding his involvement in the
    offense, his statement to authorities was incomplete. Additionally, the defendant put
    the government to its burden of proof by taking the matter to trial and denying the
    essential elements of the offense. Based on the defendant's failure to affirmatively
    accept responsibility for his conduct in the offense, no reduction for acceptance of
    responsibility is recommended. USSG §3E1.1, comment. (n.2).

23.     **Total Offense Level:**                                          <u>34</u>

## PART B.     DEFENDANT'S CRIMINAL HISTORY

*Upon advice of counsel, the defendant chose not to discuss criminal history during the
presentence interview.*

<u>Juvenile Adjudications</u>

24.     None known.

Adult Criminal Convictions

| | Date of Arrest | Conviction/Court | Date Sentence Imposed/Disposition | Guideline | Pnt |
|---|---|---|---|---|---|
| 25. | 04/16/1990 (Age 25) | 1) Misd. Failure to Heed Light or Siren Docket No. 90CR 4843 2) Misd. Reckless Driving to Endanger Docket No. 90CR 4858 Randolph County District Court, Asheboro, NC | 07/31/1990: Consolidated for judgment. 30 days imprisonment, suspended, 2 years unsupervised probation. | 4A1.2(e)(3) | 0 |

The court records were not available; however, according to computer records, the defendant was represented by retained counsel, Phil Edwards, and entered a plea of guilty. Charges of Speeding (90CR 4845) and Unlawful Use of Highways (90CR 4858) were voluntarily dismissed. The offenses occurred on April 16, 1990.

| | | | | | |
|---|---|---|---|---|---|
| 26. | 11/28/1991 (Age 26) | Misd. Simple Assault Docket No. 91CR 5507 Chatham County District Court, Pittsboro, NC | 02/19/1992: 30 days imprisonment, suspended, 5 years unsupervised probation, $100 fine. | 4A1.2(e)(3) | 0 |

The court records were not available; however, according to computer records, the defendant was found guilty by the court. Attorney representation is unknown, and the offense occurred on November 27, 1991.

| | | | | | |
|---|---|---|---|---|---|
| 27. | 08/20/1997 (Age 32) | Misd. No Operator's License Docket No. 97CR 65487 Guilford County District Court, Greensboro, NC | 09/11/1997: Prayer for judgment. $80 court costs. | 4A1.2(c)(1) | 0 |

The court records were not available; however, according to computer records, the defendant pled guilty to a lesser offense. Attorney representation is unknown. The original charge was Driving While License Revoked. The offense occurred on August 20, 1997.

| | | | | | |
|---|---|---|---|---|---|
| 28. | 08/20/1999 (Age 34) | Felony Weapons on Educational Property/Aid Docket No. 99CRS98422 Guilford County Superior Court, Greensboro, NC | 05/25/2000: Prayer for Judgment. $116 court costs. | 4A1.1(c) | 1 |

The court records were not available; however, according to computer records, the defendant was represented by private counsel and entered a plea of guilty. The offense occurred on August 20, 1999.

| | | | | | |
|---|---|---|---|---|---|
| 29. | 05/30/2001 (Age 36) | 1) Felony Trafficking in Cocaine by Possession Docket No. 01CRS86272, 2) Felony Trafficking in Cocaine by Transporting 01CRS86274, 3) Felony Possession With Intent to Sell/Deliver Cocaine Docket No. 01CRS86281, 3) Felony Maintain Vehicle/Dwelling/ Place for Controlled Substance (2 counts) Docket No. 01CRS86277 01CRS86279, Guilford County Superior Court, Greensboro, NC | 07/25/2002: Consolidated for judgment. 28 to 34 months imprisonment, suspended, 36 months supervised probation, 6 months Intensive Supervision Program, $3,500 fine, $115 court costs. 05/31/2005: Probation modified and extended 24 months. 03/28/2007: Probation terminated. | 4A1.1(c) 4A1.2(a)(2)(B) | 1 |

The defendant was represented by retained counsel Jan Pritchett, and entered a plea of guilty. The offenses occurred on May 30, 2001, and involved between 28 and 200 grams of cocaine. The defendant's probation was modified and extended for two years to July 23, 2007. However, on March 28, 2007, the defendant's probation was terminated.

30.    A criminal records check also revealed convictions for Unsafe Movement in Alamance County; Speeding in Chatham, Guilford, and Randolph Counties; and Improper Equipment-Speedometer, in Randolph County. These citations occurred between 1986 and 2003, and resulted in the payment of fines and/or court costs. No criminal history points are assessed. USSG §4A1.2(c)(2).

Criminal History Computation

31.    The total of the criminal history points is 2. According to the sentence table (Chapter 5, Part A), 2 criminal history points establish a Criminal History Category of II.

Other Arrests

| | Date of Arrest | Charge | Agency/Court | Disposition Date |
|---|---|---|---|---|
| 32. | 04/04/1988 (Age 23) | Felony Larceny Docket No. 88CR 1491 | Chatham County District Court, Pittsboro, NC | 05/16/1989: Dismissed by the Court. |

The offense allegedly occurred on April 4, 1988.

| | | | | |
|---|---|---|---|---|
| 33. | 09/08/1994 (Age 29) | Misd. No Operator's License Docket No. 94CR 4494 | Chatham County District Court, Pittsboro, NC | 10/11/1994: Voluntarily dismissed without leave. |

The offense allegedly occurred on September 8, 1994.

| | | | | |
|---|---|---|---|---|
| 34. | 12/07/1995 (Age 30) | Misd. License Not in Possession Docket No. 95CR 78654 | Guilford County District Court, Greensboro, NC | 01/19/1996: Voluntarily dismissed without leave. |

The offense allegedly occurred on December 7, 1995.

| 35. | 04/18/1996 (Age 31) | Misd. No Motorcycle Endorsement Docket No. 96CR 40119 | Guilford County District Court, Greensboro, NC | 06/06/1996: Voluntarily dismissed without leave. |

The offense allegedly occurred on April 18, 1996.

| 36. | 02/26/1998 (Age 33) | Felony Possession of Stolen Motor Vehicle Docket No. 98CR 3070 | Randolph County District Court, Asheboro, NC | 02/27/1998: Voluntarily dismissed without leave. |

The offense allegedly occurred on February 25, 1998.

| 37. | 12/31/1998 (Age 34) | Felony Conspiracy to Sell/Deliver Crack Cocaine Docket No. 99CRS23838 | Guilford County Superior Court, Greensboro, NC | 11/15/1999: Voluntarily dismissed without leave. |

The offense allegedly occurred on December 31, 1998.

38.      ***Dismissed Traffic:*** The defendant was cited for Speeding twice in 1990, and cited for Covering/Disguising Registration Plate in 2001, all in Randolph County. He was also cited for Drive Through Gas Station to Avoid Traffic Control, in 1999, in Guilford County.

## PART C.      OFFENDER CHARACTERISTICS

Personal and Family Data

39.      The following information was obtained during a presentence interview with the defendant and a telephone interview with his brother, Malcolm Burnette.

40.      The defendant, Harvey Lee Burnette Jr., was born on December 12, 1964, in Chapel Hill, NC. He is the elder of two sons born to his parents, Harvey Lee Burnette Sr., and Mexie Marsh Burnette. In addition to his younger brother, the defendant has four older maternal half-brothers, one of which is deceased. According to the defendant, his father, a truck driver and laborer, passed away in his sleep in 1998. The defendant's mother is 81 years old and resides in Pittsboro, NC, and is a retired poultry inspector.

41.      His brothers are as follows: Thurl Marsh age 60, lives in Apex, NC, and works as a shuttle bus driver; Larry Marsh is 58 years old and lives in Siler City, NC, and works as a realtor;

James Marsh, age 54, also lives in Siler City, NC, and is disabled due to throat cancer; Malcolm Burnette, age 40, lives in Pittsboro, NC, and works as a truck driver; and Julius Earl Marsh, who served in the Navy, was killed in 1977, when he was hit by a truck. Thurl Marsh and Malcolm Burnette, have prior misdemeanor convictions on their record. However, Larry and James Marsh are both convicted felons. Larry Marsh was convicted of a federal drug offense in 1994 and served a 60-month term of supervised release until December 2005. James Marsh was convicted on the state level in 1999 for Possession With Intent to Sell/Deliver Cocaine. He is currently serving a two-year term of probation for Driving While Intoxicated.

42. The defendant stated that he and his brothers were raised in Pittsboro, NC, in a two-parent home. Although his father was physically present, he was emotionally absent from the family, primarily because of his abuse of alcohol. The defendant described his mother as the foundation of the family and was both mother and father to her sons. He further remarked that his mother sometimes worked two jobs to make ends meet and ensure that her sons had the best she could provide. Because of his mother's generosity, the defendant stated that he lived a joyful life. He spent lots of time hanging out with his cousins and being typical kids. In his spare time, he enjoyed playing sports and was a member of his school's track and field and football teams. The defendant attended public school and maintained a host of friends.

43. After high school, the defendant became interested in getting into law enforcement. He took law enforcement classes through community college but dropped out after he was misled about the need for classes in order to become a law enforcement officer. He later took classes with the intent to become a North Carolina state trooper, but did not do well academically. He gave up on his dream and began looking for other alternatives, including becoming a truck driver.

44. For the past 13 years, the defendant has maintained a relationship with Jeanie Haman and reported that they are planning to marry. Although they have no children together, Ms. Haman has three children of her own that the defendant has helped to raise. The defendant stated that although he has never married, he has fathered three children. He has two daughters, Sasha Burnette, age 21, and Brittney Brooks, age 20. Their mother is Jillian Brooks and both girls live in Siler City, NC. The defendant indicated that Sasha is a student at Winston-Salem State University and Brittney is a nurse. The defendant also has a four-year-old son, William McSwain, fathered during a relationship with Amy McSwain. The defendant's son lives with his mother in Asheboro, NC, and has no contact with the defendant, although the defendant has a court-ordered child support obligation regarding his son. The defendant stated that all three of his children are in good health.

45. The defendant was residing with Ms. Haman in Greensboro, NC, at the time of his arrest. He expressed an interest in taking up a trade while incarcerated so that he can become self-sufficient after his release from incarceration. The defendant's brother, Malcolm Burnette

confirmed the defendant's background information. He commented that he and his brother have a very close relationship, and that he views his brother as a generally good person.

Physical Condition

46. The defendant reported no history of serious or chronic illness and no current medical problems. He described his current health as excellent. He also does not take any prescribed medications.

Mental and Emotional Health

47. The defendant stated he does not have a history of mental or emotional problems and has never been treated by a mental health specialist. He believes he is in good mental and emotional health. He was cooperative and articulate during the presentence interview and did not present any evidence of mental or emotional illness.

Substance Abuse

48. The defendant admitted to a history of substance abuse. He recalled that he began smoking marijuana in high school. His use was confined to weekends and described as recreational use. He also drank alcoholic beverages occasionally during social gatherings. In 1996, the defendant started using cocaine for what he perceived as medicinal purposes, primarily to relieve stress. He described his use as occasional and acknowledged that he last used cocaine the week before his arrest. While he prefers alcohol, he states that cocaine has given him the most problems. The defendant submitted to drug testing while under the supervision of pretrial services and did not submit any urine samples that tested positive for a controlled substance. He also reported that, although he has never participated in a drug treatment program, he is interested in participating in the Bureau of Prisons 500 hour drug treatment program.

Education and Vocational Skills

49. According to the defendant's transcripts, he enrolled at Northwood High School in Pittsboro, NC, in 1981. He graduated with his High School Diploma in 1985 with a grade point average of 1.45 and ranked 121 of a class of 133 students. The defendant stated that in 1986, he attended Central Carolina Community College for approximately seven months and took basic law enforcement classes (unverified). He also returned and took classes between 1989 and 1993, but dropped out after not performing well academically (unverified). The defendant reported no further education with the exception of obtaining his certificate to drive trucks through the Future Truckers of America.

Employment Record

50.   The defendant was remanded into custody on July 30, 2009, and has remained in custody since that date. On May 16, 2009, the defendant began working for S.P. Richards in Greensboro, NC, as a truck driver and earned $1,000 monthly (verified as part of pretrial release). The defendant also owned a lawn service, J.R.'s Lawn Care Service, which he operated over the past two years.

51.   From 2001 to 2007, the defendant worked for Townsend Incorporated in Siler City, NC, as a truck driver and earned a monthly salary of approximately $4,000. He was dismissed from his job after a confrontation regarding a dispute over his hours. This employment was verified through tax returns and a W-2.

52.   In 2000, the defendant purchased a tractor/trailer and operated Burnette Trucking in Siler City, NC. He primarily hauled commodities as an independent contractor for various companies. His truck developed insurmountable mechanical problems in 2002, forcing him to sell the truck (unverified).

53.   The defendant also mentioned that for approximately 12 years prior to starting his trucking business, he worked for several different poultry companies as a chicken catcher. Some of the companies were Piedmont Poultry, Golden Poultry, and Townsend Poultry. He earned about $2,000 per month, but quit due to the difficulty of the work.

Financial Condition: Ability to Pay

54.   Financial information was obtained from a signed personal financial statement submitted by the defendant and verified by reviewing his credit report, tax returns, county tax records, DMV records, and the National Comprehensive Report by Plus Associates.

Assets

    Cash

        Checking Account (BB&T)                                        $0.00

                        Subtotal:     $0.00

    Unencumbered Assets*

        1998 Ford Expedition                                          $2,000.00

        1995 Chevrolet Lumina                                          $200.00

        1994 Suzuki                                                   $400.00

        1991 Acura Legend L                                           $100.00

| | |
|---|---:|
| 1985 GMC | $100.00 |
| Subtotal: | $2,800.00 |

**Equity in Other Assets**

| | |
|---|---:|
| Mansfield Mobile Home | $0.00 |
| Subtotal: | $0.00 |
| Total Assets: | $2,800.00 |

**Secured Debts**

| | |
|---|---:|
| Green Tree Financing (mortgage) | $24,000.00 |
| Total Secured Debt: | $24,000.00 |

**Unsecured Debts**

| | |
|---|---:|
| AFNI-Bloom Collections (Kimbrells furniture) | $593.00 |
| Santander Financing (auto loan) | $6,081.00 |
| American Financing (auto loan) | $10,000.00 |
| Total Unsecured Debt: | $16,674.00 |

| | |
|---|---:|
| NET WORTH: | ($13,874.00) |

**Monthly Cash Flow**

| | |
|---|---:|
| Rental Income * | $318.00 |
| Total Income: | $318.00 |

**Necessary Living Expenses**

| | |
|---|---:|
| Mortgage | $318.00 |
| Total Expenses: | $318.00 |

NET MONTHLY CASH FLOW:                                         $0.00

> \* The defendant owns several vehicles, most of which have been repossessed or are inoperable. He purchased a 1995 Chevrolet Lumina on October 10, 2007, and the plates have been turned in. He purchased a 1994 Suzuki on July 2, 1997, which he gifted to his fianceé, and the plate status is expired. He owns a 1973 Chevrolet Skidback tow truck with over $500,000 miles and which has expired tags and is inoperable. The defendant also has a 1985 GMC with expired plates and a 1991 Acura Legend that is inoperable and the plates have been revoked. The defendant has a 1998 Ford Expedition with expired tags and a lien through American General Financial Services. He also co-signed with his girlfriend for a 2005 Mitsubishi Lancer ES that has revoked plates and whose lien holder is Drive Financial Services. A 2005 Jeep Cherokee purchased in October 2007, for $13,000 was repossessed, and a 2000 Suzuki motorcycle was seized by law enforcement in connection with the instant offense.

> \* The defendant purchased a 2000 Mansfield Mobile Home (single-wide) on December 14, 2001. The lien holder is GreenPoint Credit LLC (Green Tree Financial Services). The mobile home is parked at Rockcreek Dairy Mobile Home Park, Greensboro, NC, and is operating as rental property. Although the defendant is purchasing the mobile home, the land it sits on is being leased.

55.  The defendant does not appear to have financial resources with which to make a monetary penalty immediately or anytime in the near future due to the length of his sentence and his financial obligation to his four-year-old son. It is anticipated that imposition of a monetary penalty would place an undue hardship upon the defendant's minor son.

**PART D.    SENTENCING OPTIONS**

*As previously noted, the government filed an Information of Prior Conviction providing that the defendant be subjected to penalty enhancements.*

Custody

56.  **Statutory Provisions:** The term of imprisonment is not less than 20 years, and not more than life imprisonment. 21 U.S.C. § 841(b)(1)(A).

57.  **Guideline Provisions:** Based on a total offense level of 34 and a criminal history category of II, the guideline range for imprisonment is 168 to 210 months. USSG Ch.5 Pt.A - SENTENCING TABLE. When the statutory minimum sentence is greater than the maximum of the guideline range, the statutory minimum sentence shall be the guideline sentence, which is 240 months. USSG §5G1.1(b).

Supervised Release

58.     **Statutory Provisions:** A term of at least 10 years supervised release is required. 21 U.S.C. § 841(b)(1)(A).

59.     **Guideline Provisions:** The term of supervised release shall not be less than that which is required by statute. Therefore, the term of supervised release is 10 years. USSG §5D1.2(c). Supervised release is required if the Court imposes a term of imprisonment of more than 1 year. USSG §5D1.1(a). The Court may order a term of supervised release to follow imprisonment in any other case. USSG §5D1.1(b).

Probation

60.     **Statutory Provisions:** The defendant is ineligible for probation because probation has been expressly precluded by statute for that offense. 18 U.S.C. § 3561(a)(2) and 21 U.S.C. § 841(b)(1)(A).

61.     **Guideline Provisions:** The defendant is ineligible for probation because probation has been expressly precluded by statute for that offense. USSG §5B1.1(b)(2).

Fines

62.     **Statutory Provisions:** The maximum fine is $8,000,000. 21 U.S.C. § 841(b)(1)(A). The Court shall impose a special assessment of $100 for each felony count of conviction. 18 U.S.C. § 3013(a)(2)(A).

63.     **Guideline Provisions:** The fine range for the instant offense is from $17,500 to $8,000,000. USSG §5E1.2(c)(3).

64.     In determining the amount of the fine, the Court shall consider the expected costs to the government of any term of probation, or term of imprisonment and term of supervised release imposed. USSG § 5E1.2(d)(7). The most recent advisory from the Administrative Office of the United States Courts, dated May 6, 2009, suggests that a monthly cost of $2,157.88 be used for imprisonment; $1,990.13 monthly for a community corrections center, and a monthly cost of $311.94 for supervision.

Restitution

65.     **Statutory Provisions:** Restitution is not an issue in this case.

Denial of Federal Benefits

66. **Statutory Provisions:** Upon the first conviction (state or federal) of an offense involving distribution of a controlled substance, a defendant may be declared ineligible for any or all federal benefits for up to 5 years as determined by the Court. Upon a second conviction for such an offense, a defendant may be declared ineligible for any and all federal benefits for up to 10 years as determined by the Court. 21 U.S.C. § 862(a)(1)(B). The instant offense is the defendant's <u>second</u> conviction for an offense involving distribution of a controlled substance. The suspension of the period of ineligibility is authorized pursuant to 21 U.S.C. § 862(c). Additionally, subsection (e) of 21 U.S.C. § 862 provides, "The penalties provided by this section shall not apply to any individual who cooperates with the Government in the prosecution of a Federal or State offense or who is in a Government witness protection program."

67. **Guideline Provisions:** The Court may deny eligibility of certain federal benefits of any individual convicted of distribution or possession of a controlled substance. USSG §5F1.6.

## PART E.     FACTORS THAT MAY WARRANT DEPARTURE

68. The probation officer has not identified any factors which may warrant a departure from the guideline range.

## PART F.     FACTORS THAT MAY WARRANT A SENTENCE OUTSIDE OF THE ADVISORY GUIDELINE SYSTEM

69. The probation officer has not identified any factors which, under 18 U.S.C. § 3553(a), would warrant a sentence outside of the advisory guideline range.

Respectfully submitted,
GEORGE JOHNSON
Chief U.S. Probation Officer

By: _Katerina M. Holland (RDP)_
KATERINA M. HOLLAND
Senior U.S. Probation Officer

/kmh
Approved:

_R- Dale Parish_                  _12/1/09_
R. DALE PARRISH                              Date
Senior U.S. Probation Officer

## ADDENDUM TO THE PRESENTENCE REPORT

### UNITED STATES DISTRICT COURT
### MIDDLE DISTRICT OF NORTH CAROLINA
### UNITED STATES V. HARVEY LEE BURNETTE, JR.
### DOCKET NO. 1:09CR193-1

### <u>OBJECTIONS</u>

### <u>By the Government</u>

The government has no objections.

### <u>By the Defendant</u>

The probation officer conferred with defense counsel on January 12, 2010, who indicated there were no objections to the presentence report.

Respectfully submitted,

GEORGE JOHNSON
Chief U.S. Probation Officer

By: _R-Dale Parrish_

R. DALE PARRISH
Senior U.S. Probation Officer

_1/12/10_
Date

RDP/rdp

# SENTENCING RECOMMENDATION

## U.S. DISTRICT COURT
### FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
### UNITED STATES V. HARVEY LEE BURNETTE, JR.
### DOCKET NO. 1:09CR193-1

TOTAL OFFENSE LEVEL:            34
CRIMINAL HISTORY CATEGORY:    II

|  | **Statutory Provisions** | **Guideline Provisions** | **Recommended Sentence** |
|---|---|---|---|
| **CUSTODY:** | NLT 20 years NMT life* | 240 months** | 240 months |
| **PROBATION:** | Precluded | Ineligible | Not recommended |
| **SUPERVISED RELEASE:** | At least 8 years* | 8 years | 8 years |
| **FINE:** | NMT $8,000,000* | $17,500 to $8,000,000 | Not recommended |
| **RESTITUTION:** | Not applicable | Not applicable | Not applicable |
| **SPECIAL ASSESSMENT:** | $100 | $100 | $100 |

*As previously noted, the government filed an Information of Prior Conviction providing that the defendant be subjected to penalty enhancements.*

**When the statutory minimum sentence is greater than the maximum of the guideline range, the statutory minimum sentence shall be the guideline sentence, which is 240 months. USSG §5G1.1(b).*

## Recommended Conditions of Supervised Release:

1.    The defendant shall comply with the standard conditions of supervised release.

2.    The defendant shall provide any requested financial information to the probation officer.

3.    The defendant shall submit to substance abuse testing, at anytime, as directed by the probation officer. The defendant shall cooperatively participate in a substance abuse treatment program, which may include drug testing and inpatient/residential treatment, and

pay for treatment services, as directed by the probation officer. During the course of treatment, the defendant shall abstain from the use of alcoholic beverages.

4.      The defendant shall cooperatively participate in a program of employment readiness or retention as directed by the probation officer.

## Justification

The defendant, Harvey Lee Burnette Jr., comes before the Court for sentencing, following a conviction for Conspiracy to Distribute Cocaine Hydrochloride. The defendant is a repeat offender who has a prior felony drug conviction. At the time of his arrest on the instant offense, the defendant was involved in purchasing multi-kilogram quantities of cocaine hydrochloride for distribution in the North Carolina area. He was connected to a major drug distribution organization (cartel) that was responsible for trafficking in hundreds of kilograms of cocaine from Mexico.

It is noted for the Court that the defendant is a 44-year-old African-American male who has lived in North Carolina all of his life. The defendant has significant ties to the area, including two adult daughters and one minor son. Additionally, he has four brothers, two of whom are convicted felons. It is also noted that the defendant has a history substance abuse and is interested in participating in a drug treatment/education program. His successful transition back into society will hinge on his ability to develop a marketable trade or obtain meaningful employment, and disassociate himself from the local drug culture. Taking into consideration all factors relevant to sentencing, the probation officer believes the mandatory minimum sentence of 240 months is appropriate and serves to promote respect for the law, deter the defendant from future criminal conduct and does not present any disparity in sentencing issues. A term of supervised release at the minimum range is significant and more than necessary to monitor the defendant's lawful conduct. The conditions listed above are recommended to monitor the defendant's income by mandating that he disclose his financial records. Participation in drug testing and treatment is also recommended to detect if the defendant reverts to drug use. A condition for employment readiness will assist the defendant with obtaining meaningful employment.

**Voluntary Surrender**

Based on the provisions of 18 U.S.C. § 3143(a)(2), the defendant is subject to mandatory detention.

Respectfully submitted,
GEORGE JOHNSON
Chief U.S. Probation Officer

By: _Katerina M. Holland (ROP)_
KATERINA M. HOLLAND
Senior U.S. Probation Officer

/kmh

Approved:

_R. Dale Parr_
R. DALE PARRISH
Senior U.S. Probation Officer

12/1/09
Date